# RICHARDSON *v.* BELT.

EQUITY; INTERPLEADER; MECHANICS' LIENS.

1. The essential foundation of the equity of interpleader is, that the party seeking the relief must not be under an independent or special liability to one of the claimants.

2. A bill of interpleader is not maintainable where the relation of debtor and creditor exists between the complainant and one of several defendants, unless it appears that the other defendants have acquired a claim of title or interest arising from such relation.

3. Building contractors, although required under the terms of their contract to protect the owner from mechanics' liens, can not maintain a bill of interpleader against the administrators of a deceased subcontractor to whom they owed a balance, and materialmen who furnished the deceased subcontractor with materials for the building, where the subcontractor made no assignment of the sum due him and created no lien thereon, enforceable against it in the hands of the contractors, since the materialmen furnishing materials to a subcontractor are not entitled to mechanics' liens under the mechanics' lien law in force in this District.

No. 802. Submitted June 9, 1898. Decided June 21, 1898.

HEARING on an appeal by the complainants from a decree sustaining a demurrer to and dismissing a bill of interpleader. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree dismissing a bill of interpleader. The bill was filed by Joseph Richardson and James A. Burgess against the following defendants: Robert V. Belt and T. Percy Myers, administrators of the estate of Zephaniah Jones, The Washington Brick Company, and James H. McGill.

The facts alleged are substantially as follows:

In June, 1896, Richardson and Burgess contracted with Joseph E. Willard to erect for him a building at the corner of Fourteenth and F Streets, in the City of Washington.

They, in turn, contracted with Zephaniah Jones to do all the brick work required by their contract aforesaid, for the sum of $11,843.56.   Before the completion of his subcontract, to wit, September 30, 1897, the said Jones was accidentally killed.   Richardson and Burgess then furnished the necessary materials and labor, and completed the work contracted for by Jones.

After all proper charges against Jones on account of finishing the work, there remained due him, by them, the sum of $2,939.85.   Payment of this sum was demanded by Belt and Myers, who are the duly appointed administrators of Jones.

The defendant, the Washington Brick Company, claims to have furnished Jones with bricks for use in performing his contract, and alleges an indebtedness due by him therefor in the sum of $1,500.   A similar claim for the sum of $452 has been made by the defendant McGill.   Both of these defendants claim equitable liens upon the fund aforesaid for the material so furnished by them to Jones, and threaten to institute suits against complainants to recover the amounts so alleged to be due them.

Defendants also claim liens upon the building aforesaid for their materials used in its construction, and have threatened to file the same under the provisions of the mechanics' lien act.   The building has been completed and turned over to said Willard, but, by the terms of their contract with him, the complainants are bound to protect the said building and to save said Willard harmless, from any and all liens for labor and material used in the construction thereof.

Complainants claim no interest in the fund, and pray that the defendants be required to interplead and adjust their several claims to the same, and, in the meantime, that they be restrained from prosecuting any actions at law or in equity against complainants, on account of their respective claims.

Defendants Belt and Myers, administrators of Jones, demurred to the bill.

Before hearing on the demurrer, the Washington Brick Company filed an answer in which it alleged delivery to Jones of large quantities of bricks from July 1 to September 30, 1897, and claimed a balance due by him on account thereof, of $1,369.72. It alleged that Jones was financially irresponsible, but industrious and honest, and the bricks were furnished him upon his promise to pay for them "out of and as he received his said payments from the plaintiffs." It further alleged that Jones's estate is insolvent, and that one of his creditors has a judgment against him that will absorb the fund if permitted to go into the hands of the said administrators.

A few days later, the Raritan Hollow and Porous Brick Company filed a petition for leave to intervene and become a defendant, which was granted. It then filed an answer setting up a claim against Jones for brick furnished to the amount of $998.69, and alleging the same general facts as in the answer of the Washington Brick Company aforesaid.

Both defendants also alleged that the administrators of Jones have filed a mechanics' lien against the building for the whole amount of the sum due by complainants.

The demurrer of the administrators, coming on to be heard, was sustained and the bill was dismissed. The complainants appealed therefrom in due order. The Washington Brick Company and the Raritan Hollow and Porous Brick Company have also prosecuted an appeal, which has been separately entered on the docket of this court as No. 803.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellants.

*Mr. Wm. J. Miller* and *Mr. T. Percy Myers* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

Liberally as, we confess, the remedy of interpleader ought

to be applied in the protection of indifferent persons from vexatious suits by two or more separate claimants of a fund or thing of which they may be in possession, or charged with the safe keeping, without having any claim of beneficial interest therein, we do not think it can be extended to the complainants upon the facts alleged in their bill. They do not have the same legal relation with each defendant.

As between the administrators of Jones, upon the one hand, and his creditors upon the other, the complainants are not indifferent persons—mere stakeholders. They are under a contract with Jones. They bound themselves to pay him a certain sum of money upon the performance of certain services. These have been completely performed. Some of the money accruing due upon that performance has not been paid. They have not received, or come into possession of, a fund claimed to belong to Jones. On the contrary, they owe him a certain sum of money for the recovery of which his representatives are entitled to maintain an action of debt upon the contract.

An essential foundation of the equity of interpleader is, that the party seeking the relief must not be under an independent or special liability to one of the claimants. Adams Eq. 204; 3 Pom. Eq., Sec. 1327.

Where there is an independent liability of the party seeking the relief to one of the several defendants, arising out of the relations subsisting between them or upon a special contract, creating, for example, the relation of bailor and bailee, landlord and tenant, or creditor and debtor, there can be no interpleader, unless it be made to appear that others have acquired a claim of title or interest, derived under the said liability.

If it appeared from the allegations of the bill in this case, that Jones had made assignments of the fund in whole or in part, or had given orders to the complainants to pay certain sums therefrom, and that a controversy had arisen as to the validity of these, or their priority, and the like, the

complainants would then, notwithstanding their original special liability to Jones, have an equity to compel the adverse claimants to interplead, even if Jones himself were one of them claiming adversely to his own orders, assignments, and specially created liens. And the same equity would exist if, in the meantime, a special lien had been created by operation of law, that could be enforced against the building erected by the complainants.

There is no pretense, however, that Jones had made any assignment of the fund, or created any lien thereon enforceable against it in the hands of the complainants. It is clear also that the mechanics' lien act gave no lien to the defendants who furnished material to Jones, because he was himself a subcontractor. *Leitch* v. *Hospital*, 6 App. D. C. 247; *Herrell* v. *Donovan*, 8 App. D. C. 322, 332. Hence, the allegation that defendants have threatened to file liens against the building unless their demands be satisfied is immaterial.

The contention on behalf of the appellants is, that independently of the statute, the defendants have an equitable lien upon the fund—the debt due by Richardson and Burgess to Jones—because the said fund was created by the materials furnished by them to Jones for the performance of his contract. How, without special contract, such a lien could exist despite the limitations of the mechanics' lien act itself, it is difficult to comprehend.

Nor are we particularly impressed with a process of reasoning that, in the absence of any statutory provision, would raise up in favor of a creditor, who, without contracting for a lien, shall have furnished materials used in a building, an equity that does not exist on behalf of other creditors generally, whose goods—sold on credit and remaining unpaid for—may have been converted into money by their debtors, or may even remain unconverted at the time of the debtors' insolvency or decease.

But if the proposition could be maintained under any

circumstances, it is not perceived how it can be availed of here to support the bill of interpleader. Even if the answers of the defendants, showing the insolvency of Jones' estate, and the danger of the absorption of the fund by other creditors, could be considered in connection with the facts alleged in the bill, the conclusion could not be different.

Unless restrained by the process of some court, the complainants can safely pay their debt to Jones' administrators without incurring liability to the other defendants. The validity of the liens claimed by them can be determined in some proceeding instituted by themselves, or in the course of the administration of Jones' estate, wherein all adverse interests may be represented and their priorities adjusted.

For the reason that this claim of the equitable lien may hereafter become the subject of litigation in a proceeding wherein all the parties at interest may be directly represented, we must not be understood as passing upon its existence and effect any further than is necessarily involved in the allegations of the bill.

Finding no error in the decree, it will be affirmed, with costs, and it is so ordered.                    *Affirmed.*